E-FILED
Wednesday, 24 November, 2021  02:38:06 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **HENRY JONES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No.: 21-cv-4120-JBM** |
| | ) | |
| **NURSE AMANDA LAMB, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MERIT REVIEW

Plaintiff, proceeding *pro se*, files a complaint under 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs at the Hill Correctional Center ("Hill"). The case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour,* 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States,* 721 F.3d 418, 422 (7th Cir. 2013)(citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations", it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 Fed. Appx. 588, 589 (7th Cir. 2011) quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

On July 20, 2019, Plaintiff injured his left hand while playing football or basketball. He was seen by the nurse and refused pain medication, telling her that he had only "jammed" his fingers, something he had done before. Plaintiff indicates, however, that four or five hours later his hand swelled up and was excruciatingly painful. Plaintiff claims that when he flexed his ring finger a "bone was showing poking out." The Court does not believe that Plaintiff is alleging that

the bone was protruding through the skin but, rather, that when he flexed the finger, the bone had a raised and unnatural appearance. Plaintiff told an officer who called the healthcare unit and was told that Plaintiff would not be seen, as he had been seen twice "the other day." Plaintiff later saw a lieutenant at chow Hall and showed him the hand. The lieutenant called on his radio and sent Plaintiff to the healthcare unit.

When Plaintiff arrived, he was seen by Defendant Nurse Lamb who asked why he was there, since she had told the officer not to send him. Plaintiff told her he felt like his hand was broken. Defendant told Plaintiff it was nothing but a sprained wrist and sent him back to his cell. Plaintiff subsequently submitted a sick call slip so he would be seen in the following day, but he was not called to the healthcare unit. On July 29, 2019, Plaintiff showed his swollen and discolored hand to a sergeant. The sergeant called the healthcare unit, indicating that Plaintiff needed to be seen. When Plaintiff arrived there, he was seen by Nurse Lopez not a party, who told him his hands would be x-rayed.

Plaintiff underwent an x-ray on July 30, 2019, at which time a small fracture was noted. Plaintiff was referred to an orthopedic surgeon and, several days later, was seen by Dr. Gregory Shiar at Cottage Hospital. On an unidentified date, Dr. Shiar undertook surgery, placing a plate and six pins in Plaintiff's hand. Dr. Shier allegedly told Plaintiff that the delay had caused the hand to heal incorrectly, and it needed to be re-broken.

Plaintiff does not indicate whether he had a cast or dressing on hand. He pleads, however, that he was told to wrap the hand in plastic when he showered. Plaintiff claims that on at least two occasions, Defendant Lamb refused to provide him a plastic bag although the other nurses would do so. Plaintiff grieved the matters and otherwise claims that he made Defendant Warden

Williams aware of the alleged mistreatment. Plaintiff also wrote to Wexford Health Sources, Inc., whom he which he identifies as Defendant Lamb's employer.

Plaintiff also complains that on August 26, 2019, Defendant Lamb refused to give him his pain medication. Plaintiff also pleads, without any detail, that he was issued a disciplinary ticket "concerning Nurse Amanda Lamb." He does not indicate who issued the ticket, the nature of the charges, or whether he suffered discipline as a result. Plaintiff does not, in fact, claim that the ticket was false or ill-founded. Plaintiff requests compensatory and punitive damages as well as unidentified injunctive relief.

## ANALYSIS

It is well established that deliberate indifference to a prisoner's serious medical need is actionable as a violation of the Eighth Amendment. *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and "either acts or fails to act in disregard of that risk." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). The failure to address pain readily treatable pain may be evidence of deliberate indifference. *Petties v. Carter*, 836 F.3d 772, 730 (7th Cir. 2016), as amended (Aug. 25, 2016). So, too, a defendant may be liable for a delay in providing treatment. Plaintiff is cautioned, however, that he must be prepared to provide verifiable medical evidence to support that the alleged delay caused him injury. *Williams v. Liefer,* 491 F.3d 710, 714-15 (7th Cir. 2007).

Plaintiff pleads a colorable claim that Defendant Lamb was deliberately indifferent in turning Plaintiff away from the health care unit and refusing, on one occasion, to provide him his pain medication. While Plaintiff also claims that Defendant Lamb should have provided him a plastic bag for the shower, other nurses provided it, so it does not appear that this caused Plaintiff

injury. *See Zehner v. Trigg*, 133 F.3d 459, 460 (7th Cir. 1997) (under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), a plaintiff cannot recover compensatory damages absent a showing a "physical injury.") While Plaintiff might otherwise assert a claim for punitive damages, he fails to plead that the failure to provide the plastic bags was so egregious as to show "evil motive or intent, or reckless or callous indifference..." *Kyle v. Patterson*, 196 F. 3d 695, 697-98 (7th Cir. 1999). This claim is dismissed.

While Plaintiff claims that Defendant Lamb "made it her business" to cause him problems, he does not allege that she acted in retaliation for a protected First Amendment activity. To effectively plead retaliation, plaintiff allege claim that he was engaged in some protected First Amendment activity, that he experienced an adverse action that would likely deter such protected activity in the future, and that the protected activity was "at least a motivating factor" in the Defendants' decision to take the retaliatory action. *Bridges v. Gilbert,* 557 F.3d 541, 552 (7th Cir. 2009).

While Plaintiff names Warden Williams, he does not allege that Defendant Williams personally participated in the alleged deprivation. *See Pepper v. Village of Oak Park,* 430 F.3d 809, 810 (7th Cir. 2005) (in a § 1983 action, plaintiff must allege personal liability on the part of a defendant. Sending grievances to an official, standing alone, is insufficient to give rise to personal liability. *Larue v. Estate of Obaisi*, No. 18-932, 2021 WL 3290919, at *9 (N.D. Ill. Aug 2, 2021) (citing *Gevas v. Mitchell*, 492 F. App'x 654, 660 (7th Cir. 2012) ("Gevas alleges no personal involvement by the warden outside of the grievance process, and for that reason … fails to state a claim against the warden."); *Owens v. Godinez*, 860 F.3d 434, 438 (7th Cir. 2017) (explaining that the mishandling of "grievances by persons who otherwise did not cause or

participate in the underlying conduct states no claim") (internal citation and quotation marks omitted).

Plaintiff names Wexford but does not claim that he was injured due to a policy or practice of Wexford. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 691-92 (1978). *See also, McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (to adequately plead *Monell* liability, allegations "must allow [the court] to draw the reasonable inference that the [defendant] established a policy or practice" which caused the injury). Wexford may not be held accountable merely for the actions of its employee, Defendant Nurse Lamb, as there is no *respondeat superior* liability under § 1983. *Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992).

**IT IS THEREFORE ORDERED:**

1.      This case shall proceed on the deliberate indifference claims asserted against Defendant Lamb. All other claims and all other Defendants are DISMISSED under Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915A and will not be included in the case, except in the Court's discretion upon motion by a party for good cause shown, or by leave of court pursuant to Federal Rule of Civil Procedure 15. Plaintiff will have an opportunity within 30 days, to replead should he wish. The pleading is to be captioned Amended Complaint and is to include all of Plaintiff's claims without reference to a prior pleading.

2.      Plaintiff files [5], a one-page motion for recruitment of pro bono counsel. Confusingly, Plaintiff claims that only one attorney, Thomas J. Pliura, has agreed to take his case. As it appears that Plaintiff expects to be represented, [5] is rendered MOOT. Plaintiff's motion for status [8], is rendered MOOT by this order.

3.      The Clerk is directed to send Defendant pursuant to this District's internal procedures: 1) a Notice of Lawsuit and Request for Waiver of Service; 2) a Waiver of Service; 3) a copy of the Complaint; and 4) a copy of this Order.

4.      If Defendant fails to sign and return a Waiver of Service to the Clerk within 30 days after the Waiver is sent, the Court will take appropriate steps to effect formal service on Defendant and will require that Defendant pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2). If Defendant no longer works at the address provided by Plaintiff, the entity for which Defendant worked at the time identified in the Complaint shall provide to the Clerk Defendant's current work address, or, if not known, Defendant's forwarding address. This information will be used only for purposes of effecting service. Documentation of forwarding addresses will be maintained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

5.      Defendant shall file an answer within the prescribed by Local Rule. A Motion to Dismiss is not an answer. The answer it to include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings are to address the issues and claims identified in this Order.

6.      Plaintiff shall serve upon any Defendant who has been served, but who is not represented by counsel, a copy of every filing submitted by Plaintiff for consideration by the Court, and shall also file a certificate of service stating the date on which the copy was mailed. Any paper received by a District Judge or Magistrate Judge that has not been filed with the Clerk or that fails to include a required certificate of service will be stricken by the Court.

7.      Once counsel has appeared for Defendant, Plaintiff need not send copies of filings to that Defendant or to that Defendant's counsel. Instead, the Clerk will file Plaintiff's document

electronically and send notice of electronic filing to defense counsel. The notice of electronic filing shall constitute notice to Defendant pursuant to Local Rule 5.3. If electronic service on Defendants is not available, Plaintiff will be notified and instructed accordingly.

8.      Counsel for Defendants is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendant shall arrange the time for the depositions.

9.      Plaintiff shall immediately notice the Court of any change in mailing address or phone number. The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

**IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO**:

 1) ATTEMPT SERVICE ON DEFENDANTS PURSUANT TO THE STANDARD PROCEDURES;

 2) SET AN INTERNAL COURT DEADLINE 60 DAYS FROM THE ENTRY OF THIS ORDER FOR THE COURT TO CHECK ON THE STATUS OF SERVICE AND ENTER SCHEDULING DEADLINES; AND,

 3) ENTER THE STANDARD QUALIFIED PROTECTIVE ORDER PURSUANT TO THE HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT.

 LASTLY, IT IS ORDERED THAT IF DEFENDANT FAILS TO SIGN AND RETURN A WAIVER OF SERVICE TO THE CLERK WITHIN 30 DAYS AFTER THE WAIVER IS SENT, THE COURT WILL TAKE APPROPRIATE STEPS TO EFFECT FORMAL SERVICE THROUGH THE U.S. MARSHAL'S SERVICE ON THAT DEFENDANT AND WILL REQUIRE THAT DEFENDANT TO PAY THE FULL COSTS OF FORMAL SERVICE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(d)(2).

ENTERED:  11/24/2021

_____s/Joe Billy McDade_____
JOE BILLY McDADE
UNITED STATES DISTRICT JUDGE